JUSTICE NELSON
concurs and dissents.
¶52 I concur with our decision on Issue 3; I dissent from our decision on Issues 1, 2 and 4.
¶53 I cannot agree with the Court’s decision affirming the trial court’s imputation of $45,000 in income to Benny based on hypothetical job opportunities in the Seattle area.
¶54 First, I find nothing in the child support guidelines that allows the trial judge to consider evidence of out-of-state job markets in imputing income to an under-employed parent. Specifically, 37.62.106(6)(d), ARM (2001), on which the majority rely, directs the court to assess “prevailing job opportunities in the community and earning levels in the community.” (Emphasis added). The “community” at issue here likely includes the Flathead Valley. It does not, by anyone’s stretch of imagination, however, include Seattle-with its vastly larger job market located hundreds of miles away:
¶55 Second, while I appreciate Benny presented evidence of jobs theoretically available in the Seattle area, he also testified that even though he had looked for work in that area, he had not found any jobs as a radio station worker, manager or program director. Moreover, evidence presented by Benny’s father, Benny Bee, Sr., not surprisingly, was to the effect that the higher income radio jobs in the Seattle area required one to work his way up from low level jobs.
¶56 Notably, neither the majority nor Renn cite any cases in support of the proposition that a parent’s imputed income can be based on what the parent might earn in a vastly larger job market located hundreds of miles away from the community in which the parent resides at the time of the child support hearing. To the contrary, however, we have stated that courts are obliged to consider the employment opportunities “available in the local job market for unemployed and under-employed parents.” In re Marriage of Wersland (1991), 249 Mont. 169, 172, 814 P.2d 991, 992 (citing In re Marriage of Gebhardt (1989), 240 Mont. 165, 172, 783 P.2d 400, 404).
¶57 And, not unlike the case at bar, in Gebhardt, we reversed the trial court’s imputation of $40,000 in income to the father “based solely on [his] testimony that he supposed his salary would have doubled had he remained in California and the speculation of [the father’s] former coworker that [the father] could probably find a job in the aerospace *47 industry.” Gebhardt, 240 Mont. at 171, 783 P.2d at 404. As we noted:
The court imputed $40,000 of income to LeRoy based only on his conjecture that had he remained in California, his salary might have doubled. Obviously, LeRoy did not remain in California. The findings of the trial court “[m]ust realistically reflect what the parents are capable of earning using their actual earnings as a guideline.” (Citations omitted).
Gebhardt, 240 Mont. at 172, 783 P.2d at 404.
¶58 Benny’s recent work history and voluntary -under-employment are only part of the child support equation. With those factors, the trial court is also obliged to consider prevailing job opportunities and earning levels in the community. 37.62.106(6)(d), ARM (2001). Here, that requirement of the child support guidelines was misapplied.
¶59 If Benny is fortunate enough to land a $45,000 to $100,000 per year job in Seattle, certainly Renn may then petition the District Court to modify Benny’s child support in accordance with the guidelines. Imputing income from such a job to him before he obtains it, however, is clearly wrong.
¶60 Since, in my view, the issues of maintenance and attorney fees hinged on the court’s erroneous imputation of income, I would reverse and remand for further proceedings on these issues.
DISTRICT JUDGE PHILLIPS, sitting for JUSTICE RICE, concurs in the foregoing dissent.